568 December 10, 2025 No. 1064

*This is a nonprecedential memorandum opinion pursuant to ORAP 10.30 and may not be cited except as provided in ORAP 10.30(1).*

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of H. M. R.-C.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

M. R.-C.,
*Appellant.*

Lincoln County Circuit Court
24JU04429; A186986

Amanda R. Benjamin, Judge.

Submitted October 30, 2025.

Shannon Storey, Chief Defender, Juvenile Appellate Section, and Sean Connor, Deputy Public Defender, Oregon Public Defense Commission, filed the brief for appellant.

Dan Rayfield, Attorney General, Benjamin Gutman, Interim Deputy Attorney General, and Kyleigh Gray, Assistant Attorney General, filed the brief for respondent.

Before Shorr, Presiding Judge, Powers, Judge, and O'Connor, Judge.

SHORR, P. J.

Affirmed.

**SHORR, P. J.**

Mother appeals from a judgment that terminated her parental rights to her daughter, H.[1] Mother raises nine assignments of error. In her first seven assignments, she challenges each of the juvenile court's conclusions that mother was unfit. We reject mother's first assignment of error that contends that the court erred in concluding that she was "unfit by reason of a single or recurrent incident of extreme conduct toward any child." ORS 419B.502. Because we affirm the court's ruling on that basis, we do not need to reach mother's second through seventh assignments of error that challenge the court's other bases for unfitness. We also reject mother's eighth and ninth assignments of error. Those assignments contend that the court erred in both concluding that it was in H's best interests to terminate mother's parental rights and then in terminating those rights. As a result, we affirm.

"We review the record in proceedings for termination of parental rights *de novo*, ORS 19.415(3)(a), and determine anew whether to terminate parental rights." *Dept. of Human Services v. J. M.-A.*, 333 Or App 334, 336, 554 P3d 263 (2024).

A detailed recitation of the facts would not benefit the parties, bench, or bar. We start briefly with the procedural facts before we summarize the facts presented at the termination-of-parental-rights (TPR) trial. Despite having received personal service of the TPR petition and proper notice of the TPR trial, mother did not appear at trial and was found in default. The Oregon Department of Human Services (ODHS) then put on one witness and presented nearly 50 exhibits relating to the TPR issues.

At trial, ODHS presented evidence that mother's parental rights to her older daughter, E, had been previously terminated by another court. That court had concluded that mother was unfit because, among other reasons, her criminal conduct and incarceration seriously impaired her availability to provide care for E and her mental illness

---

[1] Despite the efforts of ODHS, father was never conclusively identified. He did not appear in the juvenile court and is not a party to this appeal.

also rendered her incapable of providing care for extended periods of time.[2] ODHS then presented evidence that mother's frequent criminal conduct and mental health issues continued to present the same concerns and had not been ameliorated. For instance, since H came into the care of ODHS, mother was convicted in three separate cases that resulted in incarceration, varying from one night to a few months. In addition, mother was diagnosed with antisocial personality disorder, methamphetamine use disorder (in reported remission), and marijuana use disorder. Despite mental health services being recommended to her following a psychological evaluation, mother had not engaged in any of those services. The court considered these facts and others and ultimately concluded that they presented the same concerns that led to the termination of mother's older child, E, and had not been ameliorated.

As noted, mother first contends that the trial court erred in concluding that there was clear and convincing evidence that she was unfit under ORS 419B.502 by reason of a single or recurrent incident of extreme conduct toward any child. Extreme conduct includes "[p]revious involuntary terminations of the parent's rights to another child if the conditions giving rise to the previous action have not been ameliorated." ORS 419B.502(6). ODHS first contends that mother did not preserve this argument or any of her arguments because she did not appear at her termination trial. Mother argues that any preservation requirement is excused *because* she had not appeared at trial and, as a result, her counsel could not participate so she had no practical ability to preserve her argument.

We recently rejected the same argument that mother makes in the context of a failure to appear at a jurisdictional hearing. *Dept. of Human Services v. J. M. C.*, 343 Or App 497, 498, 578 P3d 1288 (2025) (stating that the father had the ability to preserve the issue he raised on appeal by appearing at the hearing). However, even assuming preservation was excused for the purposes of the TPR trial, we would still conclude based on our *de novo* review of the facts that there was clear and convincing evidence that mother

---

[2] The court also concluded that mother had failed to provide substitute care.

was unfit by reason of her extreme conduct. There is clear and convincing evidence that her rights were previously terminated to her older child on the same bases presented here, and there is similarly persuasive evidence that those issues have not been ameliorated.

Turning to mother's eighth and ninth assignments of error, we also conclude that clear and convincing evidence demonstrates that termination of mother's parental rights is in H's best interests. ORS 419B.500. At the time of the TPR trial, H had not had contact with her mother for over a year. She had become ill and distressed, including vomiting and crying for hours, around the times she did have prior scheduled visits with her mother. H is "very well bonded" to her current resource family, who are relatives who have adopted H's older sister E and are potential adoptive parents for H. Having exercised our review of all of the facts *de novo*, there is clear and convincing evidence that terminating mother's parental rights is in H's best interests. We conclude that the benefits to the child of ending her legal relationship with mother outweigh the risk of harm posed to the child by severing that relationship. *Dept. of Human Services v. L. M. B.*, 321 Or App 50, 53, 515 P3d 927 (2022).

Affirmed.